UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI BROWN; and EMILY BROWN,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>NARCONON FRESH START d/b/a SUNSHINE SUMMIT FRESH START; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL; NARCONON INTERNATIONAL; and DOES 1-100, ROE Corporations I-X, inclusive,<br><br>　　　　　Defendants. | Case No. 14CV1907-MMA-JMA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Doc. Nos. 6, 10] |

　　　　Plaintiffs Sherri Brown and Emily Brown ("Plaintiffs") allege violations of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, and California state law stemming from recorded phone conversations and from drug rehabilitation treatment administered by Narconon Fresh Start ("Fresh Start"), Association for Better Living and Education International ("ABLE"), and Narconon International (collectively, "Defendants"). Defendants move to dismiss Plaintiffs' complaint pursuant to

Federal Rule of Civil Procedure Rule 12(b)(6).[1]  The Court finds the matter suitable for decision on the papers, without oral argument, pursuant to Local Civil Rule 7.1.  Having considered the parties' submissions, and for the reasons stated below, the Court **GRANTS** Defendants' Rule 12(b)(6) motions to dismiss Plaintiffs' cause of action for violations of the Federal Wiretap Act, and **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## BACKGROUND[2]

On or about March 6, 2014, Sherri Brown searched on the Internet to find a rehabilitation facility for her daughter, Emily Brown.  Doc. No. 1 ("Compl.") ¶ 13.  Sherri found a website that claimed to be a resource for finding independent rehabilitation facilities.  *Id.*  She called the phone number on the website, and spoke with a representative named Jake.  *Id.*  Jake told Sherri that he was part of a referral agency that helps people find drug rehabilitation programs.  *Id.* ¶ 12.  He then told Sherri about Fresh Start, a drug rehabilitation program with a 76% success rate, and said he would put Sherri in contact with the person in charge of arranging finances.  *Id.* ¶ 13.

Sherri was contacted by Tonya Lawson, an Admissions Counselor at Fresh Start, who represented to Sherri that the cost of the Fresh Start program was $33,000, but that she could arrange a "scholarship" of $23,000 for Emily Brown.  *Id.* ¶¶ 14-15.  Sherri asked Tonya three times whether the Fresh Start program had anything to do with religion and Tonya responded each time that the program was completely secular.  *Id.* ¶ 16.  Tonya represented that there would be licensed medical professionals, as well as a counseling program available for her daughter.  *Id.* ¶ 17.  Tonya further represented to Sherri that the Fresh Start program had a sauna treatment that had been scientifically proven to reduce or eliminate an addict's

---

[1] As Defendants' Rule 12(b)(6) motions are almost identical in pertinent part, the Court will address the motions together.

[2] The Court assumes the truth of all facts as alleged in the complaint.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

1  drug cravings by flushing out residual drug toxins stored in an addict's fatty tissue.
2  *Id.* ¶ 19.  Tonya then reiterated the treatment program's 76% success rate.  *Id.* ¶ 18.
3  Based on the above representations, Sherri paid Fresh Start $10,000.00 to provide
4  drug treatment to her daughter, Emily.  *Id.* ¶ 20.

5        Both of the above phone calls were recorded by Fresh Start, without Sherri's
6  knowledge.  *Id.* ¶¶ 83-87.  She would not have consented to the recordings if asked.
7  *Id.*  Defendants record their sales calls and keep them in a library for further study.
8  *Id.* ¶ 84.  Defendants' employees are required to take any taped conversation in
9  which a potential customer does not purchase Defendants' services to quality control
10 to review for mistakes in the sales pitch.  *Id.* ¶ 83.

11       Contrary to what Sherri was told, Fresh Start's treatment program had a
12 religious component, did not provide treatment or counseling from doctors or nurses,
13 and did not have a scientific basis for requiring sauna treatment.  *Id.* ¶¶ 23-55.  The
14 treatment program was inspired by L. Ron Hubbard's book "The Fundamentals of
15 Thought – The Basic Book of Theory and Practice of Scientology for Beginners."
16 *Id.* ¶ 24.  The Church of Scientology's website indicates that this book was
17 designated by L. Ron Hubbard as the "Book One" of Scientology.  *Id.* ¶ 25.  Fresh
18 Start has no evidence of the 76% success rate that it claims.  *Id.* ¶ 47.

19       Due to the bizarre "treatments" Fresh Start subjected Emily to she felt very
20 scared and unsafe.  *Id.* ¶ 54.  Emily escaped from Fresh Start in the middle of the
21 night to avoid having to partake in any more treatments.  *Id.*  Emily continues to
22 suffer mental anguish and paranoia from her time at Fresh Start.  *Id.* ¶ 55.

23 **Procedural History**

24       Plaintiffs filed suit on October 13, 2014, alleging claims for: (1) federal
25 wiretap violations; (2) breach of contract; (3) fraud; (4)  negligence; (5) intentional
26 infliction of emotional distress; (6) negligent misrepresentation; and (7) violations of
27 California's unfair competition law.  Compl. ¶¶ 77-119.
28 //

1    Defendant Fresh Start now moves to dismiss Plaintiffs' Complaint pursuant
2 to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Doc. No. 6.  Defendants
3 ABLE and Narconon International also move to Dismiss Plaintiffs' Complaint
4 pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 10.  Plaintiffs filed
5 oppositions and Defendants replied.  Doc. Nos. 12, 13, 14, 15.  Defendants contend
6 Plaintiffs fail to plead each cause of action, and fail to allege a relationship between
7 Fresh Start, ABLE, and Narconon International that would allow piercing of the
8 corporate veil.  Docs. No. 6, 10.  Fresh Start argues that should Plaintiffs' sole
9 federal claim for violations of the Federal Wiretap Act be dismissed, the Court
10 should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state
11 law claims.  Doc. No. 6 pp. 18-19.

## LEGAL STANDARD

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill*, 80 F.3d at 337-38 (9th Cir. 1996).  Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the

complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

## DISCUSSION

### A.     Plaintiffs Fail to State a Claim for a Federal Wiretap Violation under 18 U.S.C. § 2510 *et seq.*

Plaintiffs' first cause of action is for violation of 18 U.S.C. § 2510 *et seq.*, which makes it unlawful for anyone to "intentionally [intercept], [endeavor] to intercept, or [procure] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Compl. ¶¶ 77-90. Defendants argue Plaintiffs have failed to allege that the interception of the phone call was for the purpose of committing a criminal or tortious act, and therefore Plaintiffs have failed to state a claim. Doc. No. 6 pp. 9-10; Doc. No. 10 p. 11.

Section 2520(a) creates a private right of action for an individual to recover for a violation of section 2510. However, it is not unlawful "for a person not acting under state law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act . . ." 18 U.S.C. § 2511(2)(d). This exception does not depend upon "whether the interception itself violated another law; it [depends] upon whether the purpose for the interception–its intended use–was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) (citing *Payne v. Norwest Corp.*, 911 F.Supp. 1299, 1304 (D. Mont. 1995), *aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997)). Where the taping is performed legally, but is done for the purpose of facilitating some further impropriety, such as blackmail, the exemption does not apply. *Id.* Conversely, where the purpose is not illegal or tortious, but the means are, the exemption does apply and there is no violation. *Id.*
//

Plaintiffs allege that the calls with a representative from a drug rehabilitation resource website named Jake, and an admission counselor at Fresh Start named Tonya Lawson, were recorded by Defendants, and Plaintiffs would not have consented to the recordings if asked. Compl. ¶¶ 11-19, 83-90. Plaintiffs rely on the contents of a sales pitch script allegedly used by Defendants to support the proposition that the calls were recorded. Compl. ¶ 83. Plaintiffs allege that the purpose of the recordings was to improve sales techniques and conduct further analyses on Defendants' sales techniques. *Id*. However, there are no allegations that Jake and Tonya did not consent to the recording, and nor that they were not the ones making the recordings. *See* 18 U.S.C. § 2511(2)(d). Additionally, the purpose of teaching sales techniques and conducting analyses is not criminal or tortious. *See Sussman*, 186 F.3d at 1202-03. Therefore, Plaintiffs have failed to state a claim under 18 U.S.C. § 2510 *et seq*.

Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' federal wiretap claim with prejudice. The Court finds that amendment would be futile because Plaintiffs can not amend their complaint to allege a criminal or tortious purpose without contradicting their current allegations.

**B.      Fresh Start's Rule 12(b)(1) Motion to Dismiss is Improper**

Fresh Start also moves to dismiss under Rule 12(b)(1). Doc. No. 6 pp. 3-4. Fresh Start asserts that if the court grants Defendants' Rule 12(b)(6) motions as to Plaintiffs' federal wiretap claim, their sole source of federal question jurisdiction, the Court lacks subject matter over Plaintiffs remaining state law claims and should dismiss the claims pursuant to Rule 12(b)(1). *Id*.

Jurisdiction is not defeated "by the possibility that the averments might fail to state a cause of action on which [Plaintiffs] could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). A failure to state a cause of action "calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id*. Whether the complaint adequately states a cause of action is a question of law which "must be

decided after and not before the court has assumed jurisdiction over the controversy." *Id*. Here, where the Court has exercised its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, the dismissal is on the merits, not for lack of jurisdiction. *Id*. (citing *Swafford v. Templeton*, 185 U.S. 487, 493-494 (1902)). Accordingly, the Court **DENIES** Fresh Start's Rule 12(b)(1) motion to dismiss as moot.

### C. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Remaining State Law Claims

Plaintiffs allege various state law claims including: breach of contract, fraud, negligence, intentional infliction of emotional distress, negligent misrepresentation, and violations of California's Unfair Competition Law. Compl. ¶¶ 91-119.

A district court, within its discretion, may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it once had original jurisdiction. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26, (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). When determining whether to exercise supplemental jurisdiction, the district court looks to the "underlying objectives ... of [judicial] economy, convenience, fairness, and comity." *Executive Software North America, Inc. v. U.S. Dist. Court for the Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994). Usually, when all federal claims have been dismissed, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir.1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

Here, Plaintiffs' sole federal claim, a violation of the Federal Wiretap Act has been dismissed. Accordingly, in its discretion under 28 U.S.C. § 1367(c)(3), the Court **DECLINES** to exercise jurisdiction over Plaintiffs' supplemental state law claims.

//

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions to dismiss brought pursuant to Rule 12(b)(6).  Additionally, the Court **DECLINES** to exercise jurisdiction over Plaintiffs' supplemental state law claims.  The Clerk of Court is instructed to terminate all pending motions and hearings and to close the case.

**IT IS SO ORDERED.**

**DATED:** December 5, 2014

Hon. Michael M. Anello
United States District Judge